IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 3:17-cr-00427-JO |
| v. | ) | OPINION AND ORDER |
| FRANCISCO JAVIER VIEIRA-FEREL | ) | |
| Defendant. | ) | |

JONES, District Judge.

The grand jury indicted defendant Francisco Vieira-Ferel (Vieira-Ferel) on one count of illegal reentry, in violation of 8 U.S.C. § 1326. The indictment alleges that Vieira-Ferel unlawfully reentered the United States without the consent of the appropriate authorities after having been removed as an alien on May 11, 2014.[1] Vieira-Ferel collaterally attacks a previous removal order entered against him on March 8, 2014, following expedited removal proceedings under 8 U.S.C. § 1225. Vieira-Ferel contends the expedited removal proceedings that produced the removal order of March 2014 did not comport with due process and that he was prejudiced as a result. I conclude that his due process rights were violated and resulted in prejudice to him.

---

[1] The removal order of March 8, 2014 was subsequently reinstated on March 24, 2014 and May 11, 2014. While Vieira-Ferel attacks the May 2014 removal order, the pertinent facts arise out of the March 8, 2014 removal process.

# FACTUAL BACKGROUND

Vieira-Ferel is a thirty-two-year-old Mexican national and citizen with no criminal record. On March 8, 2014, a border patrol agent arrested Vieira-Ferel in the District of Arizona, thirty meters from the border. Because Vieira-Ferel was present in the United States without permission, had been discovered within 100 miles of the border, and could not establish that he had been present in the United States for the prior fourteen days, the border patrol agent commenced an expedited removal proceeding pursuant to 8 U.S.C. § 1225. During the removal proceeding, Mark Koska (Koska), a Border Patrol Agent, completed a Notice and Order of Expedited Removal Form I-860. [#22-3]. This form documents that Vieira-Ferel was "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card or other valid entry document required by the Immigration and Nationality Act." Koska signed a certificate of service at the bottom of the form attesting that he personally served the original Form I-860 on Vieira-Ferel. Vieira-Ferel's signature does not appear on the front of Form I-860 and the back of the form is not in the record.

During the removal proceedings, Vieira-Ferel answered questions about his background and his entry into the United States. Vieira-Ferel's answers were memorialized in a two-page Record of Sworn Statement (Form I-867A). [#22-4 at 2-3]. Vieira-Ferel initialed page one of the form and signed page two. Form I-867B, a Jurat for Record of Sworn Statement, signed by Vieira-Ferel, affirmed the truth of his statements contained in Form I-867A. [#22-4 at 4]. The signed Form I-867B inaccurately states that Form I-867A consisted of one page. In these forms, Vieira-Ferel indicated that he climbed over a fence to enter the United States and came looking for work.

Koska also completed Form I-213, Record of Deportable/Inadmissible Alien [#22-1], which included basic information about Vieira-Ferel, his fingerprints and the latitudinal and longitudinal coordintes for the location of his arrest. In this document, Vieira-Ferel provided Mexican addresses for his wife and parents. This form also indicates that Vieira-Ferel was "a candidate and participant in the ALIEN TRANSFER EXIT PROGRAM as part of the OPERATION ALLIANCE TO COMBAT TRANSNATIONAL THREATS." Following the expedited proceeding, Vieira-Ferel was removed on March 9, 2014.

On October 31, 2017, Vieira-Ferel was found in the United States in the District of Oregon, taken into custody and charged with illegal reentry under 8 U.S.C. § 1326.

## LEGAL STANDARD

Any individual who enters the United States is entitled to the protections of the Due Process Clause, regardless of his legal status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Due process requires "some meaningful review" of an administrative proceeding that results in a removal order that underlies the imposition of a criminal charge. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011). When Congress enacts a procedure, aliens are entitled to it. *Barajas-Alvarado*, 655 F.3d at 1084.

To convict an alien of illegal reentry the government has the burden of proving that "the alien left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *Barajas-Alvarado*, 655 F.3d at 1079. A defendant may collaterally attack his prior removal order when facing criminal sanctions for unlawfully reentering the United States. 8 U.S.C. § 1326(d); *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014). In order to succeed in collaterally attacking an underlying removal order a defendant must demonstrate that

"(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). A removal order is fundamentally unfair if a defendant's due process rights were violated and he suffered prejudice as a result. *United States v. Garcia-Santana*, 774 F.3d 528, 532-33 (9th Cir. 2014).

An expedited removal proceeding pursuant to 8 U.S.C. § 1225(b)(1) may be employed by an immigration official if an alien is discovered within 100 miles of the United States border, has been in the United States for less than fourteen days and was not legally admitted. 8 U.S.C. § 1225(b)(1)(A)(i). "An alien present in the United States who has not been admitted or who arrives in the United States...shall be deemed for the purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). During expedited removal proceedings, immigration officers determine the admissibility of an alien and, if necessary, issue removal orders. 8 U.S.C. § 1225(a)(1).

## DISCUSSION

The statute governing expedited removal, 8 U.S.C. § 1225(b)(1), provides no opportunity for administrative or judicial review. *Raya-Vaca*, 771 F.3d at 1202. Thus, Vieira-Ferel has exhausted all available administrative remedies and was deprived of an opportunity for judicial review, satisfying the first two elements required to collaterally attack his removal proceedings. However, to challenge successfully a prior removal order, Vieira-Ferel still must establish that the earlier proceeding was "fundamentally unfair." He must show that his due process rights

were violated and he was prejudiced as a result. *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015).

## I. Due Process

Vieira-Ferel did not apply for entry into the United States at a port of entry. He was apprehended thirty meters north of the border after he climbed over a border fence. "[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Raya-Vaca*, 771 F.3d at 1203. Even expedited removal proceedings must comport with the essential principles of due process: notice and an opportunity to be heard. *Raya-Vaca*, 755 F.3d at 1204. When Congress or a federal agency enacts a procedure through statute or regulation, "aliens are entitled to it." *Barajas-Alvarado*, 655 F.3d at 1084 (9th Cir. 2011).

The required process for expedited removal proceedings is set out in 8 C.F.R. § 235.3(b)(2)(i):

> The examining immigration officer shall read (or have read) to the alien all information contained on Form I-867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I-867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I-860 *and the alien shall sign the reverse of the form acknowledging receipt*. Interpretative assistance shall be used if necessary to communicate with the alien.

8 C.F.R. § 235.3(b)(2)(i) (emphasis added).

Vieira-Ferel argues that the Border Patrol agents deprived him of due process when: (1) they failed to advise him of the charges against him; and (2) they did not review his sworn statement in Form I-867A before asking him to sign Form I-867B. Regarding his first contention, Vieira-Ferel insists he was unaware that he was in removal proceedings because the attending immigration officials failed to advise him of the charges against him on Form I-860. According to Vieira-Ferel's 2018 sworn statement, he has no memory of the agents communicating the contents of Form I-860 to him nor does he remember signing the back of the document. [#22-1 at 3]. The government argues that Koska's signature at the bottom of Form I-860 shows that the contents of the document were effectively communicated to Vieira-Ferel. But, Koska's signature at the bottom of Form I-860, titled "Certificate of Service," indicates only that the CBP officer "personally served the original of this notice upon [Vieira-Ferel]." This certificate says nothing about whether it was communicated to Vieira-Ferel in the Spanish language or whether he understood the proceedings and therefore does little to dispel due process concerns. *See United States. v. Rojas-Fuerte,* 2019 WL 1757523 at *5 (D. Or. Apr. 19, 2019) ("In the absence of a signature by [the defendant] ... the Court cannot confirm that [the defendant] actually was advised of the specific charge or charges against him in a language that he could understand"). Furthermore, the regulation requires that the alien sign the back of the form acknowledging receipt. The I-860 form submitted in the record here does not provide adequate assurance that Vieira-Ferel was notified of the charges. Without proof of that notice, I find Vieira-Ferel's due process rights were violated.[2]

---

[2] As I have determined that Vieira-Ferel's due process rights were violated, I do not address his second ground, that the border patrol agent did not review his sworn statement in Form I-867A before asking him to sign Form I-867B and that he initialed and signed forms without understanding their significance. [#22-1, at 3]. I note that Form I-867B contained an

## II. Prejudice

To show fundamental unfairness, a defendant must show that he was prejudiced by the violation of his due process rights. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004), *Raya-Vaca*, 771 F.3d at 1206. To do this, Vieira-Ferel must demonstrate that he had plausible grounds for relief from the removal order. *See Raya-Vaca*, 771 F.3d at 1206. The standard for plausibility requires that a defendant establish "some evidentiary basis on which relief could have been granted." *Raya-Vaca*, 771 F.3d at 1207 (quotation marks omitted). An applicant for admission to the United States may, at the discretion of the attending immigration official, withdraw his application and depart voluntarily without the need for a formal removal order. 8 C.F.R. § 1235.4.

Vieira-Ferel argues he suffered prejudice because immigration officials failed to inform him of potential avenues for relief from deportation, specifically, being permitted to withdraw his application for admission and immediately depart the United States voluntarily. Vieira-Ferel relies on *Raya-Vaca*, as well as two recent district court decisions, all of which identify voluntary application withdrawal as a process available to aliens apprehended in the United States. *Raya-Vaca*, 771 F.3d at 1206; *United States v. Ramirez-Diaz*, 359 F. Supp. 3d 994, 999 (D. Or. 2019); *Rojas-Fuerte*, 2019 WL 1757523 at *6. The government disputes that Vieira-Ferel had a plausible ground for voluntary withdrawal. It first argues that Vieira-Ferel was not eligible to withdraw his application because he did not present himself at a port of entry. And next, the government asserts that even if Vieira-Ferel were eligible to withdraw his application, he cannot

---

incorrect page number reference which lends credence to Vieira-Ferel's assertion that he did not read or understand the documents he was signing.

show a plausible likelihood that immigration officials would have allowed him to withdraw his application voluntarily.

According to the government, Customs and Border Protection (CBP), consists of the Office of Field Operations (OFO), an entity generally responsible for managing ports of entry to the United States, and the United States Border Patrol (USBP), which is tasked with apprehending contraband and people entering illegally along the United States border. The two entities employ different processes and procedures. While the OFO allows for immigrants appearing at ports of entry to request a withdrawal of their application for admission, the USBP instead permits "voluntary return" of individuals detained along the border. [# 33 at 10-11]. Thus, the government contends Vieira-Ferel was limited to voluntary return, not withdrawal of application for admission.

However, the government fails to explain the unambiguous statutory language in 8 U.S.C. § 1225. Section 1225(1) states: "An alien present in the United States who has not been admitted or who arrives in the United States *(whether or not at a designated port of arrival ...) shall be deemed for the purposes of this chapter an applicant for admission.*" (emphasis added). In the same chapter, merely a few paragraphs later, the statutory language declares that an applicant for admission may be permitted to withdraw his or her application for admission, subject to the discretion of the Attorney General. 8 U.S.C. § 1225(4) (*see also United States v. Zuniga-Vargas*, 2018 WL 6653204 (D. Nv. Dec. 19, 2018) for similar reasoning). By being physically present in the United States and therefore an applicant for admission under 8 U.S.C. § 1225 (1), Vieira-Ferel was eligible to withdraw his application subject to the discretion of the Attorney General.

Having established that Vieira-Ferel was eligible to withdraw his application I am now tasked with judging the plausibility that his request would have been granted. Voluntary withdrawal is a form of discretionary relief outlined in 8 U.S.C. § 1225(a)(4). When reviewing discretionary relief, a court identifies the factors used by officials in making their decision and weighs the factors in light of the particular circumstances in that case. Thereafter, a court decides whether it is plausible the immigration official could have permitted the alien to withdraw his application for admission. *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015); *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013).

Vieira-Ferel, like the defendants in *Barajas-Alvarado* and *Raya-Vaca*, identifies the Inspector's Field Manual as containing the criteria CBP officers consider when determining whether to grant a voluntary withdrawal. *See Barajas-Alvarado*, 655 F.3d at 1090. "The Inspector's Field Manual provides for a highly individualized determination and instructs officers to 'consider all facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice.'" *Raya-Vaca*, 771 F.3d at 1207 (quoting INS Inspector's Field Manual § 17.2(a)(2007)).

The Manual lists six, non-exhaustive factors for the officer to consider: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." INS Inspector's Field Manual § 17.2(a) (2007); *see Barajas-Alvarado*, 655 F.3d at 1090.[3]

---

[3] The Manual also provides that "in situations where there is obvious [or] deliberate fraud" voluntary withdrawal should not usually be granted. INS Inspector's Field Manual § 17.2(a) (2007). Vieira-Ferel did not commit a deliberate fraud by simply crossing the border

Considering all the facts and circumstances in this case, I find that at the time of Vieira-Ferel's 2014 removal, there was an evidentiary basis upon which relief, withdrawal of application for admission, could have been granted. The first four factors weigh in Vieira-Ferel's favor. First, as to the seriousness of the immigration violation, Vieira-Ferel entered the United States without inspection, but he did so without attempting to elude capture by violent or dishonest means. Second, at the time of Vieira-Ferel's March 2014 removal, he had no previous findings of inadmissibility. Third, while Vieira-Ferel intended to violate immigration law by crossing into the United States without inspection, all aliens subject to this process, other than one who mistakenly blunders across the border, intended to violate immigration laws. Vieira-Ferel's stated reason for crossing the border was to find work. He was not found with drugs, weapons or false papers--items indicating an intent to violate laws other than immigration laws.

Regarding the fourth factor, whether he could easily overcome his inadmissibility, Vieira-Ferel cites his work history and statistical probability in arguing that he was a strong candidate for an H-2A temporary agricultural work visa. While the statistics cited by Vieira-Ferel (90% approval rate for H-2A visa applications in 2014) alone cannot establish plausibility of relief, they may be considered. *Raya-Vaca* at 1209 (citing *Demore v. Kim*, 538 U.S. 510, 518-31 (2003) (considering statistics when assessing challenge to immigration statute)). That said, Vieira-Ferel had no petitions for status pending.

The government offers its own statistics to counter Vieira-Ferel's contention: evidence that CBP, at the time of Vieira-Ferel's removal, had implemented a policy that favored "high

---

without inspection. *See Raya-Vaca*, 771 F.3d at 1208 (simply entering the United States without inspection is not an act of deliberate fraud). *Cf. United States v. Flores*, 901 F.3d 1150, 1163-64 (9th Cir. 2018); *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1179 (9th Cir. 2015); *Barajas-Alvarado*, 655 F.3d at 1090-91.

consequences" for apprehended unlawful immigrants. The government contends that by 2014, *voluntary returns* had fallen to 4% from 2010's 59%. [# 33 at 11]. While these statistics may be evidence of a broader policy of denying discretionary grants of relief, they do not squarely address the number of voluntary withdrawals of *applications for admission* granted at the time of Vieira-Ferel's removal. The Ninth Circuit has also made it clear that statistics alone cannot show plausibility, however they may be considered "in conjunction with other individualized evidence supporting the plausibility of relief." *Raya-Vaca*, 771 F.3d at 1209. I find this factor supports Vieira-Ferel's claim.

The fifth factor, his relative youth and good health at the time of his removal, weighs against the plausibility of relief, as it did for Raya-Vaca.

The final factor identified in the Manual asks the reviewing official to weigh the humanitarian and public interest considerations surrounding the withdrawal request. Vieira-Ferel correctly notes that family unity is a compelling humanitarian consideration and carries significant weight. *Raya-Vaca*, 771 F.3d at 1208. He now claims that at the time of his March 2014 expedited removal proceedings, his parents and six of his sisters resided in the United States [#22 at 17], and their presence should be considered compelling in his case. This claim contradicts the information he provided in 2014 when he identified his wife and parents' address as "Domocilio Conocido, Gabriel Samora, Michoacan, Mexico" on form I-213. [#22-2 at 3]. I view the record the immigration official had at the time of the removal proceeding and find no evidence of family unity to sway the immigration official. This factor does not aid Vieira-Ferel's assertion that relief was plausible.

When all the evidence and factors are weighed, Vieira-Ferel established "some evidentiary basis on which relief could have been granted." I find it is plausible that immigration officials might have granted relief from removal. *Rojas-Pedroza*, 716 F.3d at 1263.

## CONCLUSION

Immigration officials denied Vieira-Ferel due process during his 2014 expedited removal proceeding when they failed to follow established procedure and did not provide Vieira-Ferel with notice of the charges. Vieira-Ferel was prejudiced by the entry of the removal order because had he known of and been allowed to withdraw his application for admission, it is plausible that immigration officials would have granted his request. Finally, because a flawed removal order cannot be the basis of for a reinstated removal order I GRANT Vieira-Ferel's Motion to Dismiss [#21] with prejudice.

DATED this 5th day of August, 2019.

Robert E. Jones, United States District Judge